Filed 11/25/24  P. v. Brown CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT SCOTT BROWN,<br><br>Defendant and Appellant. | F087728<br><br>(Super. Ct. No. CR-23-010292)<br><br>**OPINION** |

THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Hill, P. J., Meehan, J. and DeSantos, J.

## INTRODUCTION

In 1992, appellant and defendant Robert Scott Brown (appellant) was convicted after a jury trial of first degree murder with a special circumstance, and robbery. He was sentenced to life in prison without possibility of parole.

In 2024, the trial court denied appellant's petition for resentencing filed pursuant to Penal Code[1] section 1172.6, for failing to state a prima facie case for relief.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216. Appellant filed a supplemental brief. We address his contentions, independently review the record, find the trial court's conclusions are supported by substantial evidence, and affirm the denial of his petition.

## PROCEDURAL BACKGROUND[2]

As will be explained, appellant had three jury trials. His convictions from the first and second trials were reversed for legal errors. After his third trial, he was convicted of murder with a special circumstance, and robbery, and sentenced to life without parole.

---

[1]    All further statutory citations are to the Penal Code.

[2]    In support of the opposition to appellant's petition for resentencing, the People filed this court's prior opinions in appellant's appeals from his convictions in his first, second, and third jury trials:  *People v. Brown* (1991) 226 Cal.App.3d 1361 (*Brown I*); *People v. Brown* (July 21, 1991, F013833) [nonpub. opn.] (*Brown II*); and *People v. Brown* (June 14, 1993, F017595) [nonpub. opn.] (*Brown III*).  The following procedural summary is from these prior opinions and the appellate record in the instant case.

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion."  (§ 1172.6, subd. (d)(3); see *People v. Clements* (2002) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)  The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage.  (*Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)  To the extent we have quoted the facts from appellant's trials, we have done so to place his current arguments in context, and not to make any factual findings or resolve factual disputes.

**Appellant's First Jury Trial**

On April 4, 1989, an information was filed in the Superior Court of Stanislaus County case No. 241613, charging appellant with committing the following offenses on November 8, 1988:

Count 1, murder with malice aforethought of Thomas Owen (§ 187, subd. (a)), with the special circumstance that the murder was committed while appellant, with the intent to kill, was in engaged in and an accomplice in the commission, and the flight thereafter, of robbery (§ 190.2, former subd. (a)(17)(i)).[3]

Count 2, conspiracy to commit robbery (§§ 182, 211) with three overt acts: Pamela Anderson drove appellant and George Salter to the victim's location for the purpose of robbing him, Salter obtained the bat normally kept at the 11th Street Lounge and took it with him to the scene of the crime; and appellant shared in the proceeds of the robbery; and

Count 3, robbery (§ 211).[4]

---

[3]    At the time that appellant was charged, section 190.2 defined the robbery special circumstance in former subdivision (a)(17)(i): "The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies. [¶] (i) Robbery in violation of Section 211." (Added by Initiative Measure Prop. 7, § 6, approved Nov. 7, 1978, eff. Nov. 8, 1978; amended by Stats. 1989, ch. 1165, § 16, p. 4468; amended by Initiative Measure Prop. 114, § 17, approved June 5, 1990, eff. June 6, 1990; amended by Initiative Measure Prop. 115, § 17, approved June 5, 1990, eff. June 6, 1990.)

Effective in 1996, section 190.2 was amended to redesignate the robbery special circumstance as subdivision (a)(17)(A). (Stats. 1995, ch. 477, § 1, p. 3354, added by Prop. 195, § 1, approved Mar. 26, 1996, eff. Mar. 27, 1996; Stats. 1995, ch. 478, § 2, p. 3561; amended by Initiative Measure Prop. 196, § 1, approved Mar. 26, 1996, eff. Mar. 27, 1996).) It currently states: "The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies: [¶] (A) Robbery in violation of Section 211 or 212.5."

[4]    As to the other named parties, "Anderson … was charged and testified pursuant to an agreement with the prosecution under which she was permitted to plead guilty to robbery and voluntary manslaughter. Salter was charged and tried separately. His convictions for conspiracy to commit robbery, robbery and murder were affirmed on appeal; the murder conviction was

As to all counts, it was further alleged that appellant personally used a deadly weapon, a knife, in the commission of the offenses (§ 12022, subd. (b)). (*Brown I*, *supra*, 226 Cal.App.3d at p. 1363; *Brown II*, *supra*, F013833, p. 2.)

In July 1989, appellant was convicted of count 2, conspiracy to commit robbery, and count 3, robbery. The jury was unable to reach a verdict on count 1, murder. (*Brown I*, *supra*, 226 Cal.App.3d at p. 1363; *Brown II*, *supra*, F013833, p. 2.)

As to his conviction in count 2, conspiracy, the jury found only one overt act was true—that appellant shared in the proceeds of the robbery. (*Brown I*, *supra*, 226 Cal.App.3d at p. 1367 & fn. 2.)

As to his convictions in counts 2 and 3, the jury found the allegation that he personally used a deadly weapon, a knife, not true. (*Brown I*, *supra*, 226 Cal.App.3d at p. 1363; *Brown II*, *supra*, F013833, p. 2.)

The court sentenced appellant to five years for count 3, robbery, and stayed the term for count 2, conspiracy, pursuant to section 654.

Appellant filed an appeal from the conspiracy and robbery convictions in his first jury trial. (*Brown I*, *supra*, 226 Cal.App.3d 1361.)

**Appellant's Second Jury Trial**

On December 5, 1989, while his appeal from the first trial was pending before this court, appellant's second jury trial began for count 1, murder with the robbery special circumstance, and the enhancement that he personally used a deadly weapon, a knife. (*Brown II*, *supra*, F013833, pp. 2, 14; *Brown III*, *supra*, F017595, p. 2.)

As explained above, the jury in appellant's first trial found he did not personally use a deadly weapon, a knife, in the commission of the conspiracy and robbery. "As a result of the first jury's findings, the jury in the second trial was specifically instructed that it had to find [appellant] conspired to rob and did rob [the victim], but that

---

reduced to second degree and the case remanded for resentencing." (*Brown II*, *supra*, F013833, p. 10.)

[appellant] did not use the knife in either the conspiracy or the robbery. The court also instructed the jury to disregard any testimony or argument suggesting that [appellant] murdered the victim with a knife during the robbery or the conspiracy. The court told the jury it could find [appellant] guilty of murder during the robbery on the theory that he aided or abetted the actual killer or guilty of personally murdering the victim after the robbery had been completed." (*Brown II*, *supra*, F013833, pp. 2–3, 11.)

On January 11, 1990, the jury found appellant guilty of count 1, "murder in the first degree (as an aider and abettor)" with the robbery special circumstance found true. "Consistent with the court's instruction, and the first jury's finding that [appellant] did not personally use the knife in the course of the robbery, the jury found [appellant] did not personally use a deadly or dangerous weapon in the commission of the murder." (*Brown II*, *supra*, F013833, p. 3.)

On April 11, 1990, the trial court sentenced appellant to life without possibility of parole for first degree murder with the special circumstance, to be served consecutively to the determinate term of five years already imposed at his first trial for robbery.

Appellant filed an appeal from the judgment in his second jury trial. (*Brown II*, *supra*, F013833.)

### APPELLANT'S FIRST APPEAL (*BROWN I*)

On January 16, 1991, this court filed the opinion in appellant's appeal from his first jury trial for his convictions for count 2, conspiracy, and count 3, robbery. (*Brown I*, *supra*, 226 Cal.App.3d 1361.)

We reversed appellant's conviction in count 2 for conspiracy to commit robbery, "because the sole overt act found by the jury occurred after completion of the conspiracy's objective, robbery." (*Brown I*, *supra*, 226 Cal.App.3d at p. 1363.)

We also reversed his conviction in count 3 for robbery, and agreed with appellant that the robbery conviction "was predicated solely on membership in the conspiracy, and

that invalidity of the conspiracy finding infect[ed] the robbery verdict requiring reversal." (*Brown I*, *supra*, 226 Cal.App.3d at pp. 1370–1371.)

## APPELLANT'S SECOND APPEAL (*BROWN II*)

On July 21, 1991, this court filed the nonpublished opinion in *Brown II*, appellant's appeal from his conviction after the second jury trial for first degree murder with the special circumstance. (*Brown II*, *supra*, F013833.)

We noted that our opinion in *Brown I*, that reversed his convictions from his first trial for conspiracy and robbery, was filed two days before appellant's reply brief in the second appeal was filed with this court. (*Brown II*, *supra*, F013833, p. 3.)

"Shortly thereafter, the Attorney General moved for a summary reversal (in light of the reversal of the underlying findings the second jury was instructed to abide by) so that the murder, conspiracy and robbery counts could be retried in the same proceeding. [¶] [Appellant] agreed to summary reversal of all issues raised in the instant appeal with the exception of his contention there was insufficient evidence to support the only theory of murder (aiding and abetting) and of special circumstance (murder in the course of the robbery). [Appellant] maintains that if successful on these points, under the double jeopardy clauses of the federal and state Constitutions, he cannot be retried after reversal. [Citations.] Thus, the challenge to the sufficiency of the evidence on those points is all that remains to be resolved here." (*Brown II*, *supra*, F013833, pp. 3–4.)

*Brown II* held there was substantial evidence to support the prosecution theory that appellant was guilty as an aider and abettor who acted with the intent to rob and the intent to kill, for both murder and the special circumstance. (*Brown II*, *supra*, F013833, pp. 17–19.) We reversed the judgment and remanded for further proceedings.

## APPELLANT'S THIRD TRIAL

Appellant's petition for resentencing is from the murder conviction that resulted from his third jury trial.

On February 18, 1992, as a result of *Brown II*, a second amended information was filed that charged appellant with count 1, murder, with the special circumstance that the murder was committed while appellant, with the intent to kill, was engaged in and was an accomplice in the commission, and flight thereafter, of robbery (§ 190.2, former subd. (a)(17)(i)); and count 2, robbery.

The conspiracy charge was not alleged in the second amended information. (*Brown III*, *supra*, F017595, p. 3.)

As to count 1, murder, the second amended information alleged appellant personally used a deadly weapon, a knife. (§ 12022, subd. (b).) Prior to appellant's third jury trial, however, on appellant's motion and after reviewing the decisions in *Brown I* and *Brown II*, the trial court dismissed the personal use enhancement. (*Brown III*, *supra*, F017595, p. 3.)

**Instructions**

At appellant's third trial, the jury was instructed with CALJIC No. 3.00, defining principals and aiders and abettors.

CALJIC No. 3.01 defined direct aiding and abetting: "A person aids and abets the commission or attempted commission of a crime when he or she [¶] with knowledge of the unlawful purpose of the perpetrator [¶] with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice, aids, promotes, encourages or instigates the commission of the crime.…"

CALJIC No. 3.10 stated that an accomplice is a person subject to prosecution for the identical offense charged in counts 1 and 2 against the defendant on trial by reason of aiding and abetting or being a member of a criminal conspiracy.

CALJIC No. 3.14 stated: "Merely assenting to or aiding or assisting in the commission of a crime without knowledge of the unlawful purpose of the perpetrator and without the intent or purpose of committing, encouraging or facilitating the commission of the crime is not criminal. Thus a person who assents to, or aids, or assists in, the

7.

commission of a crime without such knowledge and without such intent or purpose is not an accomplice in the commission of such crime."

CALJIC No. 8.10 stated: "Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of Robbery is guilty of the crime of murder .…" The elements were that a human being was killed, the killing was unlawful, and the killing occurred during the commission or attempted commission of robbery.

CALJIC No. 8.11 defined express and implied malice. CALJIC No. 8.20 defined willful, deliberate, and premeditated murder as first degree murder.

CALJIC No. 8.81.17 defined the elements of the special circumstance, murder in the commission of a robbery: "[t]he murder was committed while the defendant was engaged in the commission or attempted commission of a Robbery," and "[t]he murder was committed in order to carry out or advance the commission of the crime of Robbery or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the Robbery was merely incidental to the commission of the murder."

The jury was not instructed on the natural and probable consequences doctrine, conspiracy, or any other theory of imputed malice.

**Verdict and Sentence**

On February 27, 1992, the jury found appellant guilty of count 1, murder, and the offense was first degree murder, "to wit: The intentional, unintentional or accidental killing of a human being during the commission or attempted commission of a Robbery."

The jury also found true the special circumstance in a special verdict form: "[T]hat during the commission of said murder, [appellant], did have or form the intent to kill, while he was engaged in and was an accomplice to the commission of a felony, to wit, Robbery, in violation of Section 211 … as specified in … Section 190.2[, subdivision] (a)(17)(i) and that he did aid and abet in the murder of [the victim]."

8.

Appellant was also convicted of count 2, robbery.

On March 26, 1992, the trial court sentenced appellant to life without possibility of parole for murder with the special circumstance.

## APPELLANT'S THIRD APPEAL (*BROWN III*)

On June 14, 1993, this court filed the nonpublished opinion in *Brown III* that affirmed the judgment after his third jury trial. (*Brown III*, *supra*, F017595, p. 18.)

Appellant argued the third trial was barred by principles of double jeopardy based on the procedural history of the case and the findings by the prior juries in his first and second trials. We rejected this argument because we already rejected the same double jeopardy claim in *Brown II*, where we found sufficient evidence to support the prosecution theories and decided retrial on the murder and robbery charges with special circumstance allegations was permissible. (*Brown III*, *supra*, F017595, p. 7.)

Appellant also argued the trial court should have instructed the jury on issue preclusion, that it could not find appellant stabbed the victim given the jury's findings in the first trial, even though the evidence on the stabbing had been excluded from the trial. We agreed the instruction should have been given but found the error was harmless beyond a reasonable doubt. (*Brown III*, *supra*, F017595, pp. 8–9.)

> "The trial court fully instructed on the aiding and abetting and felony-murder theories. The jury was told the distinction between one who actively commits a crime and one who assists in the crime. The jury was also told that while the evidence showed someone else was involved in the crimes, the jurors were not to consider the other person's fate….
>
> "The argument of counsel clearly informed the jury the prosecution was proceeding on two theories, 1) that [the victim] was murdered during a robbery of which [appellant] was a participant, and 2) that [appellant] aided and abetted the actual killer. Nothing in the instructions or the arguments could lead the jury to believe that they might find [appellant] guilty on another, unstated, theory
>
> "The jury's verdict confirms that they understood that the prosecution's case rested on the felony-murder and aiding and abetting

9.

theories. The jury found [appellant] guilty of murder during the course of a robbery and specifically found [appellant] aided and abetted in the murder with a specific intent to do so. This last finding is enlightening because the jury was erroneously given an unmodified version of CALJIC No. 8.80. (Respondent concedes it was error to give CALJIC No. 8.80 without striking the language which explains how the jury must act if they find [appellant] was the *actual killer* rather than an aider and abettor .…) The instruction asked the jury to make a specific finding of intent only if it found [appellant] was an *aider and abettor*. This express finding by the jury is inconsistent with the contention that the jury may have impliedly found [appellant] was the actual perpetrator of the murder.

"*The jury's findings established beyond a reasonable doubt that [appellant] participated in the robbery, that [the victim] was stabbed and killed during the commission of the robbery, and that [appellant] participated in the crime with the intent to rob and the intent to kill.* Therefore, given the jury's findings, the overwhelming evidence, and the instructions given, we can say beyond a reasonable doubt the failure to instruct the jury that they could not find [appellant] personally stabbed [the victim] was harmless. [Appellant] would have been convicted as an aider and abettor and/or under the felony-murder doctrine even had the requested instruction been given." (*Brown III*, *supra*, F017595, pp. 10–11, fn. omitted, first and second italics in original, third italics added.)

We also held there was substantial evidence to support the jury's finding that he aided and abetted the murder with the intent to kill, and rejected appellant's other contentions. (*Brown III*, *supra*, F017595, pp. 11–18.)

**PETITION FOR RESENTENCING**

On December 15, 2022, appellant filed, in propria persona, the instant petition for resentencing of his first degree murder conviction pursuant to section 1172.6, and requested appointment of counsel. Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and

10.

probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

The trial court appointed counsel and set a hearing on the prima facie issue.

**The People's Opposition**

The prosecution filed opposition and argued appellant was ineligible for resentencing because the instructions and verdict showed he was convicted as an aider and abettor who acted with the intent to kill.

The prosecution filed supporting exhibits consisting of the second amended information, the verdicts from appellant's third trial in February 1992, the instructions given at appellant's third trial, the abstract of judgment from his third trial, and this court's opinions in appellant's first, second, and third appeals.

The prosecution argued the jury was not instructed on the natural and probable consequences doctrine or imputed malice, the instructions showed appellant was convicted as an aider and abettor who acted with the intent to kill, and he was ineligible for resentencing.

**Appellant's Reply**

Appellant's reply argued his petition established a prima facie case because the jury previously found the personal use enhancement was not true, that finding precluded relitigation about appellant's alleged use of the knife, and it also meant that the jury did not find he was the actual perpetrator or acted with the intent to kill. Appellant argued the trial court would have to make factual findings to reach that conclusion, and it should instead issue an order to show cause and conduct an evidentiary hearing.

In support of his reply, appellant filed an instruction that was given at his third trial that stated appellant was charged with count 1, murder, committed while appellant, "with

11.

the intent to kill was engaged in and was an accomplice in the commission, and the flight thereafter of the felony, to wit, Robbery, in violation of Section 211 …; as specified in … Section 190.2[, subdivision] (a)(17)(i). [¶] During the commission of said Murder, [appellant] personally used a deadly and dangerous weapon, to wit, a knife, in violation of Section 12022[, subdivision] (d)" and he pleaded not guilty to the charge.[5]

Appellant also filed the verdict form from his *second* jury trial, where the jury found him guilty of first degree murder and that the personal use enhancement was not true.

## The Prima Facie Hearing

On March 8, 2024, the trial court held the prima facie hearing on appellant's petition.

Appellant's counsel argued the petition presented a close case because the jury previously found appellant did not personally use a deadly or dangerous weapon, and the victim died of knife wounds, and the trial court could not make any factual findings for the prima facie issue.

The prosecutor replied that appellant was tried several times, and the jury in his first trial found appellant did not use a knife. The prosecutor argued the jury's prior finding only meant that appellant was not convicted as the actual killer. At the third trial, the jury found appellant acted with the intent to kill, and that verdict precluded relief under section 1172.6.

## THE TRIAL COURT'S DENIAL OF THE PETITION

The trial court stated that it could not make any factual or credibility findings for the prima facie determination from the prior appellate opinions, but it could consider the

---

[5] As previously noted, the People filed a second amended information before appellant's third trial, and it alleged as to count 1, murder, that he personally used a deadly weapon, a knife. Prior to the third jury trial, on appellant's motion and after reviewing the decisions in *Brown I* and *Brown II*, the trial court dismissed the personal use enhancement, and the allegation was stricken by interlineation in the second amended information. (*Brown III*, *supra*, F017595, p. 3.)

12.

record of conviction which included the charging documents, abstract of judgment, jury instructions, and verdict forms. The court relied on the prior opinions only for the procedural summaries of the case. The court made lengthy findings and denied the petition:

> "From independent portions of the record of conviction, and as outlined by the Court of Appeal's decision, the Court understands that the jury found [appellant] participated in the robbery; and that the victim was stabbed and killed during the commission of the robbery. The jury found [appellant] aided and abetted another in the murder of the victim. The jury found [appellant] participated in the crime with the intent to rob and the intent to kill.

> "The argument of counsel on the instructions as a whole clearly inform the jury the prosecution was proceeding on two theories. [F]irst, that the victim was murdered during the course of a robbery of which [appellant] was a participant. That's the felony murder rule that's no longer allowed. And, second, that [appellant] aided and abetted the actual killing.

> "The jury verdict confirms they understood that the prosecution's case rested on the felony murder and, separately, aiding and abetting theory. The jury found [appellant] guilty of murder during the course of a robbery; and specifically found [appellant] aided and abetted in the murder with a specific intent to do so.

> "The instructions asked the jury to make a specific finding of intent only if it found [appellant] was an aider and abettor.

> "In the Court's record of proceedings, and as explained in the Court of Appeal decision, the jury was not instructed on imputed malice or vicarious liability.

> "[Appellant] was convicted of first-degree murder. And the jury made a specific finding that he acted with the intent to kill, and aided and abetted in the murder of the victim …. There's plenty of ways to aid and abet without the use of a knife.

> "[Appellant] was convicted of first-degree murder as an aider and abettor who acted with the intent to kill. This is still a viable theory of murder. And [appellant], as a matter of law, contrary to his claims in the petition, could still be convicted of murder under the present law.

13.

Therefore, [appellant] has not made a prima facie showing that he is entitled to relief."

On March 8, 2024, appellant filed a notice of appeal from the trial court's order that denied his petition for resentencing.

## DISCUSSION

As noted above, appellate counsel filed a brief with this court pursuant to *Delgadillo*. The brief also included counsel's declaration that appellant was advised he could file his own brief with this court. This court sent appellant an order that, pursuant to *Delgadillo*, the appeal would be dismissed as abandoned if he failed to submit a letter brief within 30 days. Appellant timely filed a letter brief with this court in response to our *Delgadillo* order, challenging the trial court's denial of his petition.

## I. Section 1172.6

We begin with the relevant statutes and amendments. Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) became effective in 2019, and "altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) …. Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) *The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.* [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*), italics added.)

"Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. [Citation.] 'Malice shall not be imputed to a person based solely on his or her

14.

participation in a crime.' [Citation.] One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine. [Citation.] '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense). [Citation.] A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable." [Citation.] The accomplice need not actually foresee the nontarget offense. "Rather, liability ' "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." ' " ' [Citation.] Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault. [Citation.] The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime. [Citation.] Senate Bill 1437 ended this form of liability for murder." (*Curiel*, *supra*, 15 Cal.5th at p. 449.)

"Senate Bill … 1437 also added … former section 1170.95, now renumbered as section 1172.6. This created a procedural mechanism for those convicted under the former law to seek retroactive relief." (*People v. Reyes* (2023) 97 Cal.App.5th 292, 295; *Curiel*, *supra*, 15 Cal.5th at p. 449.)

When a petition for resentencing is filed, the trial court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After counsel is appointed and the parties have had an opportunity to submit briefing, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner

15.

makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

In making the prima facie determination, a petitioner is ineligible for resentencing "as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations," that the petitioner could still be convicted after the amendments to sections 188 and 189. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13–14.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The record of conviction includes the charging documents, jury instructions, closing arguments, and verdicts. (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; *People v. Harden* (2022) 81 Cal.App.5th 45, 50, 54–55; *People v. Lopez*, *supra*, 78 Cal.App.5th at pp. 13–14; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.)

"Appellate opinions … are generally considered to be part of the record of conviction. [Citation.] However …, the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] … [T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not

16.

currently be convicted of the relevant offense based on the absence of *other* elements." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

" 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." [Citation.]' " (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

We independently review the trial court's denial of a section 1172.6 petition for failing to state a prima facie case. (*People v. Bratton* (2023) 95 Cal.App.5th 1100, 1113.)

## II. Appellant's Contentions

In his letter brief, appellant contends that the jury's finding of intent to kill at his third trial is insufficient under the Supreme Court's decision in *Curiel* to conclude he was ineligible for resentencing as a matter of law.

Appellant also argues that since *Curiel* was decided before the hearing on his section 1172.6 petition, his attorney was prejudicially ineffective for failing to raise *Curiel* and object to the trial court's denial of his petition.[6]

## III. Direct Aiding and Abetting

"In general, to establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' " (*Curiel*, *supra*, 15 Cal.5th at pp. 466–467.) "[T]he requisite mens rea for direct aiding and abetting [is] 'knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends.' [Citation.] In other words, the aider and abettor must have 'knowledge of the unlawful purpose of the perpetrator' and 'the intent or

---

[6] *Curiel* was filed on November 27, 2023. (*Curiel*, *supra*, 15 Cal.5th 433.) The trial court's hearing on appellant's petition was held on March 8, 2024.

17.

purpose of committing, encouraging, or facilitating' the commission of the offense." (*Id.* at p. 468.)

"It is well settled that Senate Bill 1437 'does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252.) "After the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory. Murder liability requires a different, valid theory, such as direct aiding and abetting." (*Curiel*, *supra*, 15 Cal.5th at p. 462.)

## IV.  *Curiel*

In *Curiel*, the defendant was convicted in 2006 of first degree murder, and the jury found the gang-murder special circumstance true. The jury instructions identified defendant's accomplice as the alleged actual perpetrator of the murder. The gang-murder special circumstance instruction required the jury to find the defendant had the specific intent to kill the victim. (*Curiel*, *supra*, 15 Cal.5th at pp. 440–441, 445–446.)

The defendant in *Curiel* was not prosecuted under the felony-murder rule, and the jury was not instructed on that theory. (*Curiel*, *supra*, 15 Cal.5th at p. 464.) It was instructed on direct aiding and abetting. It was also instructed on aiding and abetting based on the natural and probable consequences doctrine; the target offenses were identified as disturbing the peace and carrying a concealed firearm by a gang member, and the jury was instructed on the elements of those offenses. The jury was also instructed on conspiracy liability for murder based on those target crimes. (*Id.* at pp. 445–447.)

The trial court denied defendant's section 1172.6 petition for resentencing because the jury was required to find he had the intent to kill for the gang-murder special circumstance. (*Curiel*, *supra*, 15 Cal.5th at pp. 440, 447.)

*Curiel* explained that while the jury found the defendant guilty of first degree murder with the special circumstance, "it was not required to identify *which theory* it found persuasive." (*Curiel*, *supra*, 15 Cal.5th at p. 467, italics added.) *Curiel* held the trial court's ruling on the petition for resentencing was erroneous because the instructions showed the jury "could have relied on the natural and probable consequences doctrine to convict [the defendant] of murder, and the findings required under that theory—even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any theory of murder under current law." (*Id*. at p. 471.)

*Curiel* further held the amendments to section 188 enacted by Senate Bill 1437 "did not simply 'add the element of malice aforethought' to existing theories of murder liability. [Citation.] It eliminated the doctrine of natural and probable consequences in its entirety: 'By limiting murder liability to those principals who personally acted with malice aforethought, section 188[, subdivision] (a)(3) eliminates what was the core feature of natural and probable consequences murder liability: the absence of a requirement that the defendant personally possess malice aforethought….' " (*Curiel*, *supra*, 15 Cal.5th at p. 462.) As a result, "a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory. Murder liability requires a different, valid theory, such as direct aiding and abetting." (*Ibid*.)

> "Because the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that [the defendant] knew that [the direct perpetrator] intended to commit one of the underlying target offenses [disturbing the peace or carrying a concealed firearm by a gang member] and that [the defendant] intended to aid him in *that* offense, not murder. Nor was the jury required to find that the underlying target offenses, themselves, were dangerous to human life. While the jury separately found [the defendant] intended to kill, such an intent standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder…. Although intent to kill is certainly blameworthy, it is

19.

insufficient standing alone to render a person culpable for another's acts. The aider and abettor must know the direct perpetrator intends to commit the murder or life-endangering act and intend to aid the direct perpetrator in its commission. It is this mental relationship to the perpetrator's acts that confers liability on the aider and abettor." (*Curiel*, *supra*, 15 Cal.5th at p. 468.)

*Curiel* concluded that since the jury was instructed on the natural and probable consequences doctrine, the finding that defendant had the intent to kill for the special circumstance " 'shed[s] no light on whether [the defendant] actually *encouraged* or assisted the perpetrator in carrying out the murder,' " as required for direct aiding and abetting. (*Curiel*, *supra*, 15 Cal.5th at p. 468.) *Curiel* reversed and remanded for an evidentiary hearing, but cautioned that its holding was limited to the jury instructions given in that specific case and did not "necessarily apply to other cases where the jury found intent to kill, or even other cases where the jury found true the gang-murder special circumstance." (*Id*. at p. 471.)

## V. Analysis

*Curiel* does not support appellant's arguments that he was entitled to an evidentiary hearing on his petition for resentencing. *Curiel* involved a different special circumstance finding under different theories of murder under current law. As *Curiel* explained, the presence of the natural and probable consequences instructions in that case showed that the jury may have convicted defendant under that now-invalid theory of imputed malice, for the intent to kill findings did not mean that his petition for resentencing was invalid as a matter of law. (*Curiel*, *supra*, 15 Cal.5th at p. 462.)

As explained above, Senate Bill 1437 did not eliminate the felony-murder rule, as it did with the natural and probable consequences doctrine, but instead amended section 189, subdivision (e) to provide that a participant in the perpetration or attempted perpetration of an enumerated felony was liable for murder if "[t]he person was not the actual killer, *but, with the intent to kill, aided, abetted, counseled, commanded, induced,*

*solicited, requested, or assisted the actual killer in the commission of murder in the first degree*." (§ 189, subd. (e)(2), italics added.)

As anticipated in *Curiel*, the jury in this case made precisely the same findings it would have been required to make in order to convict appellant of felony murder under the current law. The record conclusively establishes the jury was not instructed on the natural and probable consequences doctrine. The jury was instructed on direct aiding and abetting, and returned the special verdict finding that appellant was guilty of first degree murder in the commission of the robbery because he had both the intent to rob and the intent to kill.

We thus find the trial court correctly concluded appellant was ineligible for resentencing as a matter of law. We further reject appellant's ineffective assistance claim because an attorney is not ineffective for failing to raise meritless objections or motions. (*People v. Lucero* (2000) 23 Cal.4th 692, 732.)

## DISPOSITION

The court's order of March 8, 2024, denying appellant's petition for resentencing, is affirmed.